IDA SMALL, Appellant, v. CLARENCE J. HOUSMAN et al., Respondents.

Trial — requests for instructions to jury — erroneous practice of basing such requests upon isolated portions of evidence — action against stockbrokers for damages caused by sale of customer's stock, held by them on margins, without notice to the customer — facts examined, and held, that evidence was properly received and that the court properly charged the jury as to whether notices sent by brokers to customer were reasonable and fair.

1. The practice of counsel in selecting isolated portions of evidence presented upon a trial and requesting a trial justice to instruct a jury that if such evidence be credible, the jury *must* find for one party to the action, thereby excluding a consideration of other evidence in the case, is not to be encouraged.

2. The defendants, as copartners, were engaged in business as stockbrokers in the city of New York, and plaintiff was their customer. In 1905 her son became an employee of the defendants, and immediately thereafter the plaintiff, represented by her son, opened an account with the defendants for the purchase and sale of stocks and bonds. During the absence of the plaintiff in Europe on October 24 and 25, 1907, defendants sold stocks and bonds of plain-

tiff in default of a margin; thereafter she commenced this action to recover damages for a conversion of the same. Upon the trial the jury found a verdict for plaintiff. The judgment entered thereon was reversed by the Appellate Division and a new trial granted. Defendants in their answer affirmatively alleged that "these defendants in accordance with the customs and regulations of the New York Stock Exchange, after giving to the plaintiff *due* and reasonable notice of the time and place of sale *duly* sold at the New York Exchange for the best price that could be obtained, the securities" in question. Evidence having been adduced from one of the defendants upon direct examination as to the regularity of the sales made, counsel for plaintiff was entitled to cross-examine the witness as to the manner, time and place of the sale, the party to whom the sale was made, whether or not it was made to the defendants or to a member of either of the defendants' families, or any near relative to defendants and the price obtained on the sales as bearing upon the question of reasonableness of notice, the regularity and validity of the sale to which the witness had given evidence on his direct examination, likewise as affecting the credibility of the witness.

3. On examination of the evidence relating thereto, *held*, that the court properly charged the jury with reference to the notice of the sale of the securities given to plaintiff's son: "In considering what would be a proper or reasonable notice you have a right to consider the condition of the market on those days (the days when the sales were made); you have a right to consider the situation of the parties; you have a right to consider the relationship that existed between these defendants and the plaintiff, the length of time that such account was carried by the defendants for the plaintiff. And if you believe that the defendants had knowledge of the financial condition of the plaintiff, you have a right to consider that in connection with the question whether the notice given on the 24th and the 25th (of October) was reasonable and a fair one."

*Small* v. *Housman*, 168 App. Div. 126, reversed.

(Argued March 20, 1917; decided May 1, 1917.)

APPEAL from an order of the Appellate Division of the Supreme Court in the first judicial department, entered May 21, 1915, reversing a judgment in favor of plaintiff entered upon a verdict and granting a new trial.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Charles H. Tuttle* and *George H. Engelhard* for appellant. The trial court did not err in permitting the cross-examination of the defendant Baruch as to all the circumstances of his dealings with his client's Union Pacific stock in making the sale, particularly any circumstances indicative of intent to misappropriate it and, by pre-arrangement, to sacrifice the stock to his brother and misreport the name of the purchaser. (40 Cyc. of Law & Pro. 2498; 3 Ency. of Ev. 832; *Prout* v. *Chisolm*, 21 App. Div. 54; Dos Passos on Stockbrokers [2d ed.], 218, 219; *Ryan* v. *People*, 79 N. Y. 593; *La Beau* v. *People*, 34 N. Y. 223; *Burkitt* v. *Taylor*, 86 N. Y. 618; 13 N. Y. Wkly. Dig. 75; *Wheeler* v. *Newbould*, 16 N. Y. 392; *Brass* v. *Worth*, 40 Barb. 648; *Cameron* v. *Durkheim*, 55 N. Y. 425; *Dykers* v. *Allen*, 7 Hill, 497.) The trial court did not err in charging the jury that they might consider such knowledge as the defendants had of the plaintiff's financial condition. (*Campbell* v. *Wright*, 118 N. Y. 594; *McCutcheon* v. *Dittman*, 164 N. Y. 355; *Lazare* v. *Allen*, 20 App. Div. 616; *Cameron* v. *Durkheim*, 55 N. Y. 425; *Security Trust Co.* v. *Robb*, 142 Fed. Rep. 78; *Viemeister* v. *B. H. R. R. Co.*, 182 N. Y. 307.) The trial court did not err in charging the jury that they might consider the length of time the account was carried by the defendants for the plaintiff. (Code Civ. Pro. § 1317; *Cohalan* v. *New York Press Co.*, 212 N. Y. 344; *Roberge* v. *Bonner*, 185 N. Y. 265; *Post* v. *B. H. R. R. Co.*, 195 N. Y. 62; *Sanger* v. *Price*, 114 App. Div. 78.) The trial court did not err in its rulings upon the defendants' requests to charge. (*Quinn* v. *O'Keeffe*, 9 App. Div. 68; *Poulin* v. *B. & S. A. R. R. Co.*, 61 N. Y. 621; *Rexter* v. *Starin*, 73 N. Y. 601; *Hamilton* v. *Eno*, 81 N. Y. 116, 127; *Dooling* v. *City of New York*, 148 App. Div. 713; *Joost* v. *Brooklyn Heights R. R. Co.*, 113 App. Div. 499; *Fitzgerald* v. *Long Island R. R. Co.*, 21 N. Y. S. R. 942; 117 N. Y. 653; *Ward* v. *Forrest*, 20 How. Pr. 465; *Putnam* v. *Peabody*, 11 N. Y.

Wkly. Dig. 440; *Hughes* v. *Ferguson,* 23 N. Y. Wkly Dig. 185.)

*William D. Guthrie* and *George Zabriskie* for respondents. The trial court erred in charging the jury that in considering the sufficiency of the notice of sale they were at liberty to consider the length of time the account had been carried by the defendants for the plaintiff and the financial condition of the plaintiff. (*Hutchins* v. *Hutchins,* 98 N. Y. 56.) The error in relation to plaintiff's financial condition and the duration of the account was aggravated by the refusal of the trial court to charge as requested upon matters that really bear upon the reasonableness of the notice. (*Small* v. *Housman,* 208 N. Y. 115; *Cameron* v. *Durkheim,* 55 N. Y. 425; *Evans* v. *Wrenn,* 93 App. Div. 346; 181 N. Y. 566.) The trial court erred in admitting evidence that 1,000 shares of plaintiff's Union Pacific stock sold by the defendants were bought by Bernard Baruch through Hartwig N. Baruch, brother of the defendant. (*Nay* v. *Curley,* 113 N. Y. 575; *Cunningham* v. *Smith,* 70 Penn. St. 450; *Evertson* v. *Miles,* 6 Johns. 138; *Cohn* v. *Goldman,* 76 N. Y. 284; *Knapp* v. *City of Brooklyn,* 97 N. Y. 520; *Wood* v. *Amory,* 105 N. Y. 278; *Knowles* v. *City of New York,* 176 N. Y. 430; *Engel* v. *United Traction Co.,* 203 N. Y. 321; *Akin* v. *Lee,* 206 N. Y. 20; *Hutchins* v. *Hutchins,* 98 N. Y. 56; *Green* v. *Disbrow,* 56 N. Y. 334; *N. Y. G. & I. Co.* v. *Gleason,* 78 N. Y. 503; *Anderson* v. *R., W. & O. R. R. Co.,* 54 N. Y. 334.)

HOGAN, J. The defendants, as copartners, were engaged in business as stockbrokers in the city of New York under the name of A. A. Housman & Co. For some time prior to the 29th day of October, 1907, plaintiff was a customer of defendants. In January, 1905, her son became an employee of defendants, and immediately thereafter the plaintiff, represented by her son, opened

an account with defendants for the purchase and sale of stocks and bonds. Subsequently, during the time involved in this action, the plaintiff was represented by and acted through her son in the business transactions had with defendants.

In July the plaintiff went to Europe and remained abroad until early in November, 1907. During her absence, especially between August 14th and October 24th, the market in New York, by reason of financial conditions, grew serious from day to day.

October 24th and 25th defendants sold stocks and bonds of plaintiff; thereafter she commenced this action to recover damages for a conversion of the same. On the first trial of the action the trial justice directed a verdict for defendants. From the judgment entered thereon plaintiff took an appeal to the Appellate Division; the latter court affirmed the judgment. Upon appeal to this court the judgment was reversed and a new trial granted. (*Small* v. *Housman*, 208 N. Y. 115.)

Upon the second trial, now under review, the jury reported a verdict for plaintiff. The judgment entered thereon was reversed by the Appellate Division and a new trial granted. The plaintiff appeals to this court.

The reversal by the Appellate Division was based upon exceptions taken by defendants' counsel to a ruling of the court in the admission of evidence and to the charge of the trial justice in two particulars. Exceptions taken upon the trial are also urged by counsel for respondents in support of the reversal by the Appellate Division. The questions of law raised by the exceptions are before us for consideration.

A review of the ruling of the trial justice in the admission of evidence treated of in the opinion of the Appellate Division necessitates a reference to an affirmative defense set up in the answer, to the evidence admitted and to additional evidence in the record in connection with the same.

Defendants in their answer affirmatively alleged " these defendants in accordance with the customs and regulations of the New York Stock Exchange after giving to the plaintiff *due* and reasonable notice of the time and place of sale *duly* sold at the New York Exchange for the best price that could be obtained, the securities * * *." In support of that allegation, the defendant Baruch, as a witness for defendants, upon direct examination, was asked to state whether or not the sales which were made on the Stock Exchange of the Union Pacific were made in the usual, ordinary way of sales on the Stock Exchange, also in regard to other sales made of other securities, he was also asked to give the circumstances attending those sales, to state what the securities were that were sold. In reply to the questions he answered that the sales were made " in the usual, ordinary way of sale, they were all made in the regular way; the account will show they were sold in each instance at the market price that was then going."

Upon cross-examination he testified that on the afternoon of October 24th, 1907, about ten minutes after two, he sold on the Exchange eighteen hundred shares of Union Pacific stock, seventeen hundred shares at par and one hundred shares at one hundred and a fraction; that par was the lowest price for that stock realized that day. He was then asked: "Q. You sold one thousand of those shares to your brother, didn't you?" Counsel for defendants objected to the question as irrelevant on any allegations of the complaint and not cross-examination. The objection was overruled and exception noted for defendants. The witness answered, "Yes," and thereupon produced sales slips, as well as the purchase and sales books of the firm, which documentary evidence disclosed that a sale had been made by the witness to one C. H. Dewitt, a broker, of one thousand shares of Union Pacific at par, on account of plaintiff. The witness also testified that within fifteen minutes thereafter Union Pacific stock rose

to one hundred and five. Upon redirect examination, in explanation of the sale, he testified that his brother Hartwig to whom the sale was made did not have any interest in the firm although he was a member of the Stock Exchange and was in the Union Pacific crowd on the floor at the time and detailed the transaction relating to the sale of the one thousand shares of Union Pacific stock.

Mr. Small, the son of the plaintiff, as a witness on her behalf, testified, as bearing upon the question of the reasonableness of the notices of sales, to conversations with the defendant Housman at the office of defendants on October 24th, the first one in the morning, the second one at about two o'clock in the afternoon when counsel representing defendants at that time was present and that the sale made that day about ten minutes after the second conversation was made against his protest.

The Appellate Division held " it was error to admit evidence that one thousand shares of stock sold on October 24th was sold through another broker to a brother of the defendant Baruch. This was wholly irrelevant and calculated to raise a false issue to confuse and prejudice the jury. There was no charge of fraud in the complaint and no issue to be determined by the jury except as to the reasonableness of the notice of sale. If the notice was insufficient, which was the gravamen of plaintiff's complaint, it was of no consequence to whom the sales were made or at what price. Plaintiff's recovery would be estimated as if the securities had not been sold at all, but had been converted by the defendants."

The evidence received over objection was relevant and competent. The reasonableness and validity of the notices of sales, and of the sales, was the fundamental question to be determined by the jury. The evidence adduced by counsel for defendants from one of the defendants upon direct examination as to the regularity of the sales made, entitled counsel for plaintiff to cross-

examine the witness as to the manner, time and place of the sale, the party to whom the sale was made, whether or not it was made to the defendants or to a member of either of the defendants' families or any near relative to defendants and the price obtained on the sales as bearing upon the question of reasonableness of notice, the regularity and validity of the sale to which defendant Baruch as a witness had given evidence on his direct examination, likewise as affecting the credibility of the witness whose evidence was at variance with that of the testimony given by the son of the plaintiff, and especially in view of the fact later appearing that the one thousand shares of stock were sold soon after the purchase at an advance of five thousand dollars.

The Appellate Division decided that the trial justice was in error in that he included '' among the conditions to be considered by the jury some which should not have been taken into consideration, and the inclusion of which was calculated to work prejudice to the defendants.'' He charged that in addition to the condition of the market and the relationship of the parties the jury should consider '' the length of time that such account was carried by the defendants for plaintiff,'' also '' the financial condition of the plaintiff if the jury believed the defendants had knowledge of such conditions.'' The opinion continued: '' It needs no argument to show that neither of these considerations could have any legitimate bearing upon the question of the reasonableness of the notice, and that the reference to them amounted to the submission to the jury of irrelevant questions.''

Particular words or expressions contained in the charge of a trial justice to a jury, when taken by themselves, may seem objectionable or erroneous, but in order to determine the meaning and effect of the same they should not be considered independently of contextual phrases, but in connection with the evidence and the charge in general. In my opinion the charge as made was within

## 512 SMALL v. HOUSMAN.

the evidence in the record and was justified by the requests to charge made by counsel for defendants.

An examination of the record discloses that the language of the trial justice in his charge has been misinterpreted. When the plaintiff was upon the stand her counsel asked: "Q. In October, 1907, did you have in your safe deposit box in the city of New York unpledged, available for margin, securities of the value of several hundred thousands of dollars?" The question was objected to by counsel for defendants; the objection was sustained. Eugene W. Small, plaintiff's agent, was also asked by counsel for plaintiff, "Addressing ourselves as to the period before she (plaintiff) went to Europe, did any requests for margin ever come from A. A. Housman & Co. during that period of time?" Objection was made. The court said: "I do not see the relevancy of it." Counsel for plaintiff stated, "I think that as proving the reasonableness of this notice I have a right to show the financial solvency of Mrs. Small, the manner in which she has margined this account in the past, the fact that she had supplied margin without any request even and had also kept her account margined up to the highest point voluntarily. * * * It seems to me in determining what was a reasonable demand, what was a reasonable notice they ought to consider the whole condition of this account as it had been in the past." The court said: "I think not, I will sustain the objection."

As bearing upon the language used by the trial justice in his charge in connection with the requests of defendants to charge, it is important that certain evidence adduced by the defendants upon the trial be considered. The defendants first called Mr. Werner, a brother of the plaintiff, and upon examination proved by him that upon the morning of the 24th of October, he was called on the telephone by Mr. Clarence Housman, one of the defendants, with whom he had a personal acquaintance; that Mr. Housman asked him if he, Werner, knew where his

sister was at present, to which he replied not positively, "but that she was either just on the point of sailing or already on her way to America." The witness then said to Mr. Housman, "Are you asking for my sister's present address with any reference to any account she may have with you?" to which Mr. Housman said, "Yes." Mr. Werner said: "I will tell you, Mr. Housman, I want you to be assured of one thing, and that is that you need give yourself no concern about my sister's account, no unnecessary concern about my sister's account; you will find she is entirely competent and able to take care of all your commitments and you will find her entirely willing to do so on her return." "By commitments, I meant whatever business relations they had with her."

The witness Housman, one of the defendants, upon direct examination corroborated the evidence given by Mr. Werner. Mr. Housman further testified that in the same conversation, which he placed as October 23d, the day before the sale, he asked Mr. Werner if he was willing to help his sister, to which Mr. Werner replied, no. The latter statement was contradicted by Mr. Werner. Mr. Housman also testified to some interviews with Mr. Small. Upon cross-examination of the witness, without objection, he testified that after the record of two and one-half years of dealing with Mrs. Small and the manner in which the margin had been supplied that he was solicitous and alarmed at the time, October 24th, the day of the first sale, about the general responsibility of her as a customer, although prior to that time he hadn't anything to complain about in reference to the way she handled the account, which had been solicited by him and which he was glad to have down to the 22d of October, which account had been active and the margin well maintained.

The trial justice had charged the rule stated in the opinion of this court upon the former appeal in this case that defendants had a right if they determined that the

33

margin was not sufficient to protect the bonds and stock in their possession belonging to the plaintiff to sell the same in order that the amount of the deficiency, whatever it might be, might be covered, "but the law also says that before doing so he must give the customer a proper and suitable notice not only of the sale, but of the time of sale and the place. It need not be in writing, it can be oral. Therefore you will understand that the first question for you to consider and determine is, was a notice given of the sale on the 24th and 25th * * *. Was there a notice of sale given, and if it was, was it a reasonable notice?"

The justice then charged that notice, if given to the son of the plaintiff and it was a reasonable one, was notice to plaintiff. "* * * In considering what would be a proper or reasonable notice you have a right to consider the condition of the market on those days; you have a right to consider the situation of the parties; you have a right to consider the relationship that existed between these defendants and the plaintiff, the length of time that such account was carried by the defendants for the plaintiff. And if you believe that the defendants had knowledge of the financial condition of the plaintiff, you have a right to consider that in connection with the question whether the notice given on the 24th and the 25th was a reasonable and a fair one."

The Appellate Division held it was prejudicial error for the trial justice to charge that the jury should consider the length of time the account of plaintiff was carried by defendants and the financial condition of plaintiff if the jury believed that defendants had knowledge of such conditions for the reason that "the defendants' rights and duties with regard to plaintiff was just the same whether her account was an old or recent one, and whether she was rich or poor, and this error was emphasized by the refusal of the court to call the attention of the jury as it was requested to do, to the undisputed fact

that on October 23d, 24th and 25th the plaintiff's son had exhausted all resources at hand; that plaintiff herself was beyond the reach even of telegraphic communication and that no means had been provided by her for the protection of her account except the securities which had already been used for that purpose: if these considerations had been submitted to the jury it might well have found that the notice actually given was reasonable, because even a much longer notice could not have availed plaintiff."

Considering first the "length of time the account had been carried by the defendants for plaintiff," counsel for plaintiff sought to prove the value of all the securities held by defendants for the plaintiff's account on July 18th, 1907, the date of the departure of the plaintiff for Europe, and the value of the securities held for her account on October 28th, 1907. Objection was made to the evidence and same was excluded. He was permitted to show the value of the securities on October 23d, 24th and 25th, the dates of sales and the market value of the securities sold at the highest prices prevailing between the dates of sale and January 9th, 1908, evidently on the question of damages. The defendants called as a witness one Lewinson, the assistant manager of defendants, who kept the books in which were entered the margins that customers had on their accounts, and from which the witness made calculations once or twice or oftener each day. He testified as to the margins or securities put up on account of plaintiff after her departure for Europe, and upon cross-examination without objection, that during the entire period from January, 1905, to the time when plaintiff left for Europe in July, 1907, a margin had always been maintained on the account of at least ten points. On July 18th the margin was 13½ points, August 28th 16½ points. At the time of panic the margin was considerably below ten points. On redirect examination the witness was asked by counsel for defend-

ants: "Q. How much cash was ever put into Mrs. Small's account during the pendency of it in your office? A. $1,000." On cross-examination, the witness, without objection, stated that securities were deposited as margin from time to time and he gave a list of the securities so deposited from February 16th, 1905, down to the close of the account. The length of time the account had continued was established by defendants; the different securities deposited by plaintiff therein, explanatory of the fact adduced by them that only $1,000 in cash had at any time been deposited in the account by plaintiff, was in the case without objection and by consent of defendants, consequently proper for consideration.

Neither do I think the trial justice, upon the record in this case, committed error in permitting the jury as charged to consider the "financial condition of the plaintiff, if the jury believed that the defendants had knowledge of such condition." The plaintiff had been excluded by the objection of defendants from offering evidence on that subject. The only evidence bearing thereon was adduced by defendants by the testimony of Mr. Werner that plaintiff was competent and able to take care of her account and would be willing to do so on her return.

I do not assume that defendants were required to rely or act upon any statement made by Mr. Werner as to the responsibility of plaintiff. The sales were made subsequent to the conversation. The jury was at liberty to credit the evidence of Housman to the effect that Mr. Werner had declined to help plaintiff; that on October 24th, the day following the interview, defendants were solicitous and alarmed about the responsibility of plaintiff, notwithstanding any statement made by Mr. Werner; that defendants relied and acted upon their individual judgment based upon other facts or inquiry which, in connection with the absence of plaintiff, the condition of the market, etc., resulted in an anxiety equivalent to alarm on their part as to the financial responsibility of plain-

tiff, upon the question of the reasonableness of the notices of sales on October 24th and 25th.

The language of the trial justice, "if you believe defendants had knowledge of the financial condition of plaintiff," especially in view of the ruling that evidence by plaintiff relating thereto was irrelevant, is susceptible of but one interpretation, viz., the knowledge of defendants by reason of the facts above narrated or any additional facts known to them, which induced them to become solicitous or alarmed as to the responsibility of the plaintiff.

The charge of the trial justice may be sustained upon additional grounds. Counsel for defendant submitted thirty-five requests to charge, twenty-three of which the court declined to charge, amongst which were a number relating to a sale on October 29th which plaintiff abandoned in the Appellate Division and this court. The remaining requests were charged in the form employed by counsel, notwithstanding that the justice had already charged the substance of many of them. Material to the questions discussed, the trial justice at defendants' request, charged:

"In determining whether any of the notices of intention to sell was reasonable or unreasonable, the transactions should be viewed from the standpoint occupied by the parties at the time and if the jury find as facts that it was a time of great excitement and panic the jury must take that fact into consideration in determining whether any particular notice of intention to sell was reasonable or unreasonable.

"If, on the question whether all the notices of sale were reasonable or not the jury find as a fact that the evidence is equally balanced, and is just as consistent with reasonableness as with unreasonableness, then the plaintiff has failed to establish her case, and the jury must find a verdict in favor of the defendants.

"That the right of the defendants to sell the stocks in

question is not involved in this action, provided a sufficient notice of sale was given to Eugene Small?"

" The Court: I think the 30th I have already charged. I will charge it again if you want me to.

" 30. In determining what was a reasonable notice of intention to sell the jury must take into consideration whatever peculiar circumstances they may find existed, including the situation of the parties, the character of the market, the nature of the stock, and depending on all the circumstances the jury have the right to find a notice of this kind was sufficient."

That " the conditions were exceptional, that it was a time of tense excitement, of sudden and violent fluctuations in prices, of veritable panic, if they find such to be the fact; " " that the transactions should be viewed from the standpoint of the parties at the time; " and " in determining what was a reasonable notice of intention to sell, the jury *must* take into consideration whatever peculiar *circumstances* they may find existed, including the *situation of the parties*, the character of the market, the nature of the stock, and depending on *all* the circumstances the jury have the right to find that a notice of this kind was sufficient."

What interpretation shall be given to the expressions " peculiar circumstances," " situation of the parties " and " depending on all the circumstances " as bearing upon " reasonable notice ?"    The language employed by counsel for defendants in the requests cannot be limited to the peculiar circumstances, the situation of the parties and all the circumstances surrounding the defendants, but was applicable to the situation, position, relations, surroundings and circumstances of both parties to the action, as well as to all circumstances adduced upon the trial in connection with their business transactions.    The request made and charged that such situation and circumstances should be considered by the jury in determining what was a "reasonable " notice, that is, a notice, just, fair and

proper, conformable to reason and good judgment, included a direction to the jury that they might consider the fact that plaintiff went to Europe in July; that notwithstanding that her margin was then sufficient she departed without leaving her address or sufficient security available to maintain a required margin; that her address could not be ascertained and was not learned until after the sales on October 24th and 25th; that defendants notwithstanding their dealings with her from the commencement were on October 24th solicitous and alarmed about her responsibility and her brother had refused to assist her. Such facts in connection with others unnecessary to detail, were involved in the " peculiar circumstances " that existed including the " situation of the parties " and embraced in " all the circumstances " which the court charged the jury might consider; consequently the length of time of dealings between the parties and any facts or knowledge which might lead defendants to be alarmed as to the responsibility of plaintiff was included in the language employed in the request to charge.

The Appellate Division in its opinion in treating of the charge of the trial justice as to the length of time that the account was carried and the financial condition of the plaintiff said that the error was emphasized by the refusal of the court to call the attention of the jury, as it was requested to do, to the undisputed fact that on October 23d, 24th and 25th the plaintiff had exhausted all the resources at hand, etc., that plaintiff was beyond reach of communication, etc. In that conclusion, I think, the Appellate Division was in error.

The requests referred to by the Appellate Division were, in substance, if the jury should find that plaintiff's son was unable to furnish further margin, and so stated, and that he was unable to. communicate with plaintiff, and she was not expected to return for over a week, the notice of sale was sufficient.

Again, if the jury found as fact that the witness

Lewinson stated to the plaintiff's son certain facts testified by him as to Baruch demanding further margin, and Eugene replied in stated terms, and defendants were justified in concluding that the son had abandoned all effort to protect the account, and left defendants to· protect themselves, the jury *must* find a verdict for defendants. The charge made was as favorable to defendants as the evidence would justify. The question as to whether or not the son of plaintiff had exhausted the resources at his command gave rise to a conflict of evidence. The witness Eugene W. Small denied that he had ever stated that he could not furnish more margin or that when he brought in Southern Pacific stock that he said to defendant Housman that that was the last he had in his mother's box; he denied also that he told Mr. Housman that he could not get any more margin, or that he ever made such statements to defendants or any of their employees, or that he was unable to get more margin, or to procure or furnish additional margin, and otherwise contradicted the evidence offered by defendants that he had exhausted all of his resources. The justice had already charged at request of defendants' counsel the substance of the requests referred to, viz., that defendants had a right to make demand for further margin on plaintiff's son on October 23d and 24th, that if the son stated in substance that he had given the last of his mother's securities to which he had access and that it was impossible to supply any more from any source, defendants were not bound to make further demand. If demand was made for additional margin and not responded to, defendants had a right to sell the collateral upon reasonable and customary notice, the only object of which was to give plaintiff's agent a reasonable opportunity to redeem and in case of sale to attend the sale.

The practice of counsel in selecting isolated portions of evidence presented upon a trial and requesting a trial

justice to instruct a jury if such evidence be credible, the jury *must* find for one party to the action, thereby excluding a consideration of other evidence in the case, is not to be encouraged. Had the court charged in the language requested, counsel for plaintiff might in turn request the court to charge that if the jury should find the other way upon the same question they *must* find for the plaintiff. Counsel on both sides would thus be enabled to review the evidence pro and con upon numerous questions where a conflict of evidence existed and request the court to charge the weight to be given to each particular portion of the evidence narrated, likewise, in a summation of the facts a second time, the result of which would be to confuse rather than to guide the jury to a correct understanding of the issues to be determined and tend to disabuse the minds of jurors of the rules of law laid down for their guidance by the trial justice.

That plaintiff's address could not be ascertained was well known to defendants through information received by her son by cable as well as from the witness Werner, likewise that plaintiff did not hear from her son in response to his cable for some time and that she would not reach America until early in November. There was no conflict on that question. The charge as made was sufficient to cover the question of demand for margins.

The remaining exceptions to which our attention was called on the argument have received due consideration. We do not believe any of them are of sufficient importance to require extended consideration or to justify interference with the verdict of the jury.

With reference to the sale of certain securities on the 29th of October, which involved an amount of some three hundred dollars, it was stated on the argument that at the Appellate Division counsel for the plaintiff had consented that so far as that item was concerned it would be waived and that the judgment might be modified to that extent. The same proposition was made in this court.

In view of that fact it is unnecessary to consider the legality of the sales on the 29th of October.

The order and judgment of the Appellate Division should be reversed and the judgment of the Trial Term modified by deducting therefrom the sum of three hundred dollars, together with such interest as was allowed thereon, and as thus modified the judgment of the Trial Term is reinstated, without costs to either party in the Appellate Division or this court.

CHASE, COLLIN, CRANE and ANDREWS, JJ., concur; CARDOZO and McLAUGHLIN, JJ., not sitting.

Judgment accordingly.