NICHOLAS DISANZA, Plaintiff, *v.* CHARLES E. MERRILL and Others, Copartners, Doing Business under the Name of MERRILL, LYNCH & Co., Defendants.

City Court of New York, Bronx County, May 7, 1930.

*Joseph A. Sarafite,* for the motion.

*Chadbourne, Hunt, Jaeckel & Brown* [*Frank P. Treanor, Jr.,* of counsel], opposed.

DONNELLY, J. The action is to recover damages for the conversion, by defendants, who are stockbrokers, of certain of plaintiff's securities deposited by him with the defendants, the conversion being the sale by defendants of such securities without notice to plaintiff. The complaint alleges that the defendants agreed not to sell the securities unless upon plaintiff's failure, after notice by defendants, to put up sufficient margin to cover the drop in the market of the stocks purchased by plaintiff through defendants. In their

answer the defendants deny the agreement claimed by plaintiff, and they set forth a written contract between the parties, which contains a provision giving the defendants the right to sell or otherwise dispose of the securities for plaintiff's account whenever deemed necessary by defendants, either without notice to plaintiff or upon such notice as defendants may deem sufficient.

There was testimony on behalf of plaintiff that on three occasions prior to October 29, 1929, the defendants notified plaintiff to put up sufficient to cover his margin. No evidence was offered by defendants to contradict this testimony, their contention being that under the contract they were not obliged to give notice, and they also insist that, in any event, conditions in the stock market on the day of the crash were such that it was not humanly possible to give notice.

Plaintiff testified that on the morning of October 30, 1929, which was the day after he was sold out, he read in a newspaper that "all the stocks went down" and that he immediately made out his check for $1,000, and told his cousin to take it to the defendants. The defendants also urge that this conduct on the part of the plaintiff shows that he was not expecting any notice from them. The difficulty with this contention is that it is hard to reconcile it with the testimony of Paone, the representative of the defendants with whom the plaintiff had his dealings and who, the defendants concede, had authority to conduct the transactions. Paone, who was called by the defendants, testified: " Q. Did you at the time or at any time subsequent thereto promise to notify him when more margin was required? A. In a general way all my clients I told them I would notify them when I am notified by the firm. Q. Did you promise him specifically you would do that? A. Yes and no. Q. Tell us what you mean by that? A. I mean this: If the decline in the market is enough that the margin clerk gave me a list of the clients that shows shortage in margin I call them up for the requirement. Q. And you did that with Mr. Disanza on several occasions? A. Yes, sir. Q. And on the sale of October 29th you didn't call him? A. No."

In *Rosenthal* v. *Brown* (247 N. Y. 479, 485) it was held: " If the broker waives the right to exact strict performance, and gives time and indulgence to the customer, he cannot recall this waiver at his own option without giving notice to the customer, to the end that the latter may have an opportunity of protecting the account. Good faith will not permit the broker, after having once waived the right to close the account without notice upon default of payment at the prescribed time, suddenly to stop short and insist upon closing the account when the other party is not prepared to put up the

margin.  Strict performance in such cases may be waived by any agreement, declaration or course of conduct on the part of the broker which leads the customer to believe that time will be given him to put up additional margin, and no new or independent consideration is required to support such a waiver.  (*Toplitz* v. *Bauer*, 161 N. Y. 325, 333.)  *  *  *  When the defendants by their promise led plaintiff to believe that he had nothing to fear if he put up the required amount before that hour, they were bound, at least, to give reasonable notice of their intention to retract this promise.  (*Toplitz* v. *Bauer*, *supra; Small* v. *Housman*, 208 N. Y. 115.) ''  In *Small* v. *Housman* (*supra*) the court (at p. 125) said: '' It was a time of tense excitement, of sudden and violent fluctuations in prices, of veritable panic in which individual judgment was torn from its moorings by the impact of popular frenzy.  Notwithstanding these conditions it was still the duty of the defendants to give the plaintiff reasonable notice.  Whether the notice given answers that description depends upon the circumstances.  (*Content* v. *Banner*, 184 N. Y. 121, 123.)  Can this question be decided as matter of law?  We think not.''  The court further held that if the brokers promised that what remained of the plaintiff's account would be held until the plaintiff's return, the promise was probably not an irrevocable contract, but it could not be totally ignored to the prejudice of the plaintiff.  They were bound to give reasonable notice of their intention to retract the promise.  What was reasonable notice is not a question of law for the court, but one of fact for the jury (p. 126).

Under these decisions, it seems to me it was the defendants' duty to adduce evidence, if they could, (1) to rebut plaintiff's testimony of the previous notices, or (2) to show, if they were able to do so, that they had retracted their promise, if they had made one, not to insist upon the right to sell without notice.

Motion for reargument granted and, upon such reargument, the motion to set aside the verdict and for a new trial is granted, costs to abide the event.