PRESIDENT, DIRECTORS, &c. OF THE GRANITE BANK *vs.* ALBERT L. RICHARDSON.

A. pledged shares in a bank as collateral security for payment of a note given by him to B.: After the note fell due, B. wrote to A. requesting payment, and stating that if payment were not made immediately, he should sell said shares : A. did not pay the note, and B. did not sell the shares: The bank afterwards failed, and the shares became of no value. *Held*, in an action by B. against A. on the note, that B.'s omission to sell the shares constituted no defence for A.

ASSUMPSIT on this promissory note, signed by the defendant. "September 14th 1840. Six months from date, for value received, I promise to pay the President, Directors and Company of the Granite Bank, or order, at said bank, the sum of $300, having lodged, as collateral, four shares Phœnix Bank, Charlestown."

At the trial in the court of common pleas, the defendant introduced a letter from the plaintiffs' cashier, in these words · "Granite Bank, September 15th 1841. Mr. A. L. Richardson: Sir: Your note for $300, which fell due at this bank on the 14 (17) March last, still remains unpaid. Your immediate attention is requested to it. I am directed to say that unless it is attended to immediately, the stock held as collateral will be sold."

It was shown in evidence, that the plaintiffs had never received any dividends on said shares in the Phœnix Bank; that they had not been sold; that said bank failed in October 1842, and that said shares were afterwards of no value. "The defendant, by his counsel, George Barstow, thereupon requested the court to give the following instructions to the jury: *First*, that the plaintiffs originally acquired the entire legal title to the four shares transferred to their name, and upon default of payment by the defendant, were bound to apply the value thereof, or return the same before suit brought. *Second*. The plaintiffs having the entire legal title to the four shares on the 15th of September 1841, their letter to the defendant, on that day, is in law an election to consider the shares as their own, divested of any equity which then existed in the defendant, and as a result of such election, the plaintiffs hold for the defendant's use the then value of the shares, which operates as an extinguishment of the note, to the extent of such value. *Third*. If the jury are of opinion, from the above letter, that the defendant had reasonable cause to believe that said shares had been sold, then the plaintiffs, after the date of said letter, held the shares at their own risk, and are not entitled to recover in this action. All which instructions the court refused to give, but instructed the jury, that the plaintiffs, upon the facts proved as aforesaid, were entitled to recover the full amount of said note and interest."

The jury found for the plaintiffs, and the defendant alleged exceptions.

*Goodrich*, for the defendant.

*Brigham*, for the plaintiffs.

SHAW, C. J. On this case, the court are of opinion that the instruction of the court of common pleas was right. The bank shares were taken as collateral security for the payment of the note. It afforded the holders an additional remedy, but did not supersede their remedy by action. If they had a right to sell the shares when the note became due, they were not bound to do so. If they had been actually sold, and the value realized in cash, it might have operated as payment *de facto*; but not till

then. *Rice* v. *Catlin,* 14 Pick. 221. *Middlesex Bank* v. *Minot,* 4 Met. 325.

A very different rule may apply where money is advanced on property consigned for sale. There the pledgee takes upon himself the duties, and may be held to the responsibilities, of an agent or factor, to sell the goods consigned, and account for the proceeds before he can require payment of the advance. *Porter* v. *Blood,* 5 Pick. 54. But that is a very different question, which it is not now necessary to decide, because here the plaintiffs did not take to themselves the character or duty of agents to sell the shares, but simply took them to hold as security, with perhaps a power to sell. Till such power executed, they were under no obligation to account for the shares. The remedy of the defendant was in paying his debt and redeeming them.

Nor can we perceive that the letter of the plaintiffs to the defendant, of September 15th 1841, made any difference in the relations of the parties. It was notice that they claimed a right to sell, and intended to sell, the shares ; but until such intention was carried into effect by an actual sale, the shares remained as they did before. The beneficial interest was in the defendant, subject to a mortgage or pledge to the plaintiffs. Of course they remained at the risk of the defendant.

*Exceptions overruled.*