ABRAHAM B. RUBIN, Plaintiff, *v.* FERDINAND L. SALOMON and Another, Copartners Doing Business under the Firm Name and Style of F. L. SALOMON & Co., Defendants.

Municipal Court of New York, Borough of Manhattan, Fifth District, April 16, 1930.

*Alexander A. Mayper,* for the plaintiff.

*Gilman & Unger* [*David J. Colton* of counsel], for the defendants.

ROSALSKY, J. A customer sues a firm of stockbrokers for damages by reason of their failure to sell securities. The complaint alleges that defendants purchased on margin different shares of stocks for plaintiff's account, and subject to his order; that on October 18, 1929, upon defendants' demand, plaintiff paid them $1,000 as additional margin for properly carrying his account; and that on October 23, 1929, defendants by night letter telegram demanded of plaintiff $1,500 additional margin and gave due notice that on his failure to pay the same before ten-thirty A. M. on October 24, 1929, defendants would, at that hour and date, sell the remaining shares of stock held by them for his account. Plaintiff did not pay said sum of $1,500 or any other sum as additional margin pursuant to said notice, and defendants did not sell the said stocks pursuant to the notice given by them. As a result of defendants' failure to sell said stocks at the time and place stated by them in the notice, plaintiff claims damages of $450.52, to recover which sum this action was brought.

Plaintiff concedes defendants' right to sell the stocks upon his failure to furnish the additional margin required; but, he contends, in acquiring this right, defendants likewise incurred the obligation to sell the stocks at the particular hour and place fixed in the notice.

Defendants, on the other hand, urge that while they had the right to sell the stocks pursuant to their notice, they were not bound to do so; that they could continue to hold the stock as col-

lateral, as this right existed for their benefit and protection; and that they could properly delay its exercise, leaving plaintiff with the remedy of paying his debt and redeeming the collateral.

Plaintiff makes no claim that he at any time instructed or gave defendants an order to sell the securities. This, of course, he could have done. Can plaintiff insist that his silence shall be construed as an order to sell? I think not. Defendants were under no legal duty to exercise their admitted right to sell the stocks on default of their reasonable request for additional margin at the time and place contemplated by their notice. They might treat plaintiff's silence as a willingness to have his account carried further in the hope that the market might improve.

A fiduciary relation exists between the broker and the customer. The notice of the brokers' intention to sell is given solely for their benefit. When the brokers do not sell and choose to rely upon the personal responsibility of the customer, the latter is in no position to complain. The stock is the customer's stock, and is at all times subject to his order prior to redemption or sale. He benefits by any increase in price. He also, necessarily, assumes the risk of depreciation or loss. Should the broker undertake to sell immediately, there is often the question of reasonableness of notice. The broker is not compelled to sell, at his peril. The right to sell is not synonymous with the duty to sell. For the customer retains the right to order a sale, and the broker must obey the reasonable instructions of the customer, qualified, however, by the rule that a pledgee need not comply with the pledgor's request that he sell the pledged property, provided that the refusal to sell is the result of the exercise of the pledgee's honest judgment. (*First Nat. Bank* v. *Jones*, 156 App. Div. 277; *Field* v. *Leavitt*, 5 J. & S. 215; Jones on Collateral Securities Pledges [3d ed.], § 606.) These duties and obligations are inherent in the relationship of the parties.

A customer who purchases securities on margin through a stockbroker becomes a general owner of the securities and the broker is only a pledgee for the advances which he makes for the customer's account. The risk of the venture in the purchase of stock on margin is borne entirely by the customer. The customer is under a duty to take and pay for the stock or put up additional margin whenever reasonably requested so to do by the broker. Failing this, the broker may sell after a demand for margin is not complied with and notice of intended sale has been given. The broker is not compelled, however, to sell when the margin is exhausted. He may continue to hold the security for the account and at the risk of the customer notwithstanding the customer's failure to comply with the

demand for additional margin. The broker may thus rely on the credit of the customer who is the owner of the securities and liable for the purchase price thereof. (*Little* v. *McClain*, 134 App. Div. 197, at p. 200.)

In Dos Passos on Stock Brokers and Stock Exchanges the author says (at p. 350): "After the pledgee, however, has called upon the pledgor to pay the debt, and has given legal notice of sale, he is not bound to proceed and sell the same  *  *  *. The rule is that a pledgee of stocks or securities is under no obligation to sell the security after default in payment of the debt."

Plaintiff's counsel frankly admits that he has been unable to find any authority in this State which directly decides the point involved.

He urges, however, that a distinction should be drawn between the case of a stockbroker himself fixing the hour and place of a sale if additional margin be not forthcoming, and the case of a broker's notice to ·sell securities at some future time, without specifying a definite time and place of sale. I can find no difference in principle.

Plaintiff overlooks the fact that the notice by the stockbroker may well be considered as having been given for his own benefit and protection, and that he may waive his right to sell immediately. If the broker fails to sell at the appointed time or place, the broker may later give the customer notice of sale at another time and place; and in the absence of some order or instruction by the customer, the customer is in no position to complain.

In *Lynch* v. *Simmonds* (87 N. Y. Supp. 420) it appeared that after stockbrokers had sold some of the customer's stock, they wrote the customer that they still held certain stocks belonging to him, adding: " If you desire us to hold your stock, kindly advise us before the opening of the market, May 21, and let us have a check, otherwise we will take it for granted you do not wish us to hold them for you." The customer did not answer this letter. The brokers sold the stock on June fifth and not on the morning of May twenty-first. The Appellate Term held that the customer's silence could not be construed as a direction to sell the stock on May twenty-first, so as to charge them with the highest price obtainable on that day. The court said (p. 421): " Even if the plaintiff's failure to answer the defendant's letter should be construed as a direction to sell the stock, the defendants were not bound to sell on May 21, but were justified in waiting a reasonable time."

In *Granite Bank* v. *Richardson* (48 Mass. 407) creditors holding as collateral security for the payment of a note certain shares of bank stock, requested payment of the indebtedness and stated in

a writing that if payment was not made immediately, the shares would be sold. The debt was not paid and the pledgees did not sell the stock. The bank subsequently failed and the shares became worthless. The creditors then began an action to recover the money due. The pledgor contended that the failure of the pledgees to sell the shares of stock after they had informed him of their intention so to do, was a defense to the action. The court rejected this contention and held that the pledgee's failure to sell the stock was no defense. The court said (pp. 408–409): "If they had a right to sell the shares when the note became due, they were not bound to do so. If they had been actually sold and the value realized in cash, it might have operated as payment *de facto;* but not till then  *  *  *. Here the plaintiffs did not take to themselves the character or duty of agent to sell the shares, but simply took them to hold as security, with perhaps a power to sell. Till such power was executed they were under no obligation to account for the shares. The remedy of the defendant was, in paying his debt and redeeming them."

So, in *Esser* v. *Linderman* (71 Penn. St. 76) a customer employed stockbrokers to buy certain stocks and to carry them for him. Thereafter the stockbrokers wrote to the customer asking for further security and notified him that they could not carry his stock. They continued, however, to carry the stock until it became worthless. The court held that the stockbrokers might recover the money advanced by them for the customer's account and were not obliged to sell the stock pursuant to their notice of intention not carry the stock.

In 43 Harvard Law Review, 628, the subject was recently discussed (1930). The writer well says (at p. 630): "If, after a demand for more margin, the customer remains silent, the broker may, nevertheless, wish to retain the account. Can the customer insist that his silence be construed as an order to sell? A holding to this effect would give the broker no definite basis for action, for silence might more readily mean a willingness to be carried further in the hope that the market might improve. Moreover, the broker cannot tell how long a period of silence is necessary to effect such an order."

By his silence a customer may not take advantage of a fluctuating market at the expense of the broker, and thereafter claim that he had repudiated only if the market improved.

Motion granted with leave to plaintiff to serve and file an amended complaint within ten days after service of notice of entry of order.