## Lewis v. Hecker et al.

*Harry Shapiro*, for plaintiff; *Alexander Conn*, for defendants.

PARRY, J., September 20, 1934.—This case was tried before the court without a jury on April 2, 1934. The plaintiff brought suit against the defendants, a firm of stockbrokers, to recover moneys alleged to be due him as the proceeds of the sale of securities held by them for his account. The defendants filed a counterclaim for the amount alleged still to be owing to them from the plaintiff on two margin accounts of his own and on the account of one Emanuel Wirtshafter, guaranteed by him. The defense to the counterclaim was that there had been an accord and satisfaction as to the amount due on the Wirtshafter account and that the brokers had entirely sold out the plaintiff's account on October 28, 1929, at prices that left no balance due from him to them.

At the opening of the trial, the plaintiff suffered a voluntary nonsuit as to his claim. The case therefore proceeded to trial upon the counterclaim alone.

From the amended statement of claim, the affidavit of defense, new matter, and counterclaim, the plaintiff's reply to new matter and counterclaim, and the proofs, the court makes the following:

## Findings of fact

1. The defendants (the plaintiffs in the counterclaim) prior to October 26, 1929, were and are now stockbrokers, licensed and registered under the laws of this Commonwealth, and known as the firm of Hecker & Company.

2. The plaintiff (the defendant in the counterclaim) is M. J. Lewis, a resident of the City and County of Philadelphia.

3. Prior to October 26, 1929, the said M. J. Lewis opened a so-called "margin

account" with the said Hecker & Company, as his stockbrokers, for the purchase and sale of securities on the stock exchange.

4. On various occasions, Hecker & Company advanced certain moneys for the account of M. J. Lewis for the purchase of securities, which were thereafter held by Hecker & Company as collateral security for the advances so made.

5. On October 26, 1929, M. J. Lewis received from Hecker & Company a call for additional collateral in his account by letter as follows:

"October 26, 1929.

"Mr. M. J. Lewis,
    45 No. 7th St.,
    Philadelphia, Pa.

"Dear Sir: Your account at present quotations requires $25,000 additional margin. We have written to you several times calling your attention to the condition of your account, and it has not been brought up to our requirements.

"The above-mentioned additional security must be received by us before ten thirty (10:30 a. m.) Monday, October 28, 1929. If this additional security is not received before time specified above it will be necessary to SELL the securities carried in your account.

"Very truly yours,"

RJS:EJS

6. Thereafter, on October 28, 1929, M. J. Lewis in person ordered the agent of Hecker & Company to sell for his account certain securities.

7. On the same date, upon being informed by Hecker & Company's agent that the account was still insufficiently secured, M. J. Lewis ordered certain additional securities to be sold and expressed unwillingness to sell any others.

8. On October 28, 1929, after these transactions, a number of securities remained in the hands of Hecker & Company for the account of M. J. Lewis.

9. On October 28, 1929, also after the transactions aforementioned, M. J. Lewis was indebted to Hecker & Company in the amount of $108,890.

10. Hecker & Company sold no other securities for the account of M. J. Lewis on October 28, 1929.

11. At various times after October 28, 1929, Hecker & Company notified M. J. Lewis that additional collateral was necessary to secure his account and upon failure to receive it they would sell the securities in the account.

12. M. J. Lewis supplied no additional collateral after any of these notices.

13. Hecker & Company, after the expiration of the time limits in these notices, on some occasions sold and on others did not sell securities for the account of M. J. Lewis.

14. Following such sales, Hecker & Company sent written confirmations of them to M. J. Lewis.

15. The aforesaid calls for collateral and confirmations of sales were all received by M. J. Lewis.

16. On December 26, 1930, Hecker & Company sold the only securities then remaining in the M. J. Lewis account.

17. Following such final sale, there remained in the account an unsecured balance of $27,869.06 due to Hecker & Company from M. J. Lewis.

18. By letter to M. J. Lewis on the same date, Hecker & Company demanded payment of said unsecured balance of $27,869.06.

19. On or about March 8, 1929, M. J. Lewis opened a second margin account with Hecker & Company known as the "M. J. Lewis special account".

20. In this account, M. J. Lewis was also indebted to Hecker & Company, who held the securities therein as collateral for this indebtedness.

21. At various times after calls for additional collateral, Hecker & Company sold certain securities in the account.

22. On May 31, 1930, Hecker & Company sold the only securities then remaining in the M. J. Lewis special account.

23. Following such final sale, there remained in the account an unsecured balance of $1,867.01 due to Hecker & Company from M. J. Lewis.

24. Hecker & Company thereupon transferred this debit to M. J. Lewis' regular account.

25. Hecker & Company notified M. J. Lewis of this action by letter sent by registered mail, the return receipt for which bears the signature of M. J. Lewis.

26. The said indebtedness of $1,867.01 is included in the debit balance of $27,869.06 shown in the M. J. Lewis account on December 26, 1930.

27. No part of the aforementioned $27,869.06 has been paid to Hecker & Company.

28. The securities held by Hecker & Company as collateral for advances made to M. J. Lewis were rehypothecated by Hecker & Company for loans to themselves.

*Discussion*

The counterclaim-defendant's first defense is that had Hecker & Company sold all the securities in his account on October 28, 1929, as he claims they were obliged to do, the proceeds would have been sufficient to reimburse Hecker & Company for all advances made.

The call for collateral sent to Lewis by Hecker & Company on October 26, 1929, contained a notice that the brokers would sell the securities in the account if the specified collateral were not received before 10:30 a. m. on October 28, 1929. The contention made on behalf of Lewis is that, since sufficient security was not furnished within the time limit, the brokers must be deemed to have sold out the account on October 28th pursuant to the notice, whether they in fact did so or not. This argument is extended to other calls for collateral following which Hecker & Company made no sales.

It is well settled in other jurisdictions that a stockbroker is under no obligation to sell out an account when the margin is exhausted or even after notice of proposed sale for insufficiency of margin: Rubin v. Salomon, 136 Misc. 527; Lynch v. Simmonds et al., 87 N. Y. Supp. 420; Granite Bank v. Richardson, 48 Mass. 407.

The reason for the rule is that the proposed sale was intended solely for the broker's benefit, and he has the right, if he so desires, to waive it and to continue carrying the account: Meyer, Law of Stockbrokers and Stock Exchanges (1931), 402.

The case of Esser v. Linderman et al., 71 Pa. 76, is cited to show that the rule obtains in this State. In reality, that case does not go far enough to be a precedent upon the point, for in it the court found that the notice from the broker was a request for instructions and contemplated an answer from the customer and was not a notice of proposed sale.

However, it does not appear that our courts have ever applied a contrary rule, and we feel no hesitation in declaring it to be the law here that a broker is not obliged to sell out a margin account, even after notice of proposed sale, unless the customer orders him to do so.

The defendant in the counterclaim did not seriously claim and he certainly

did not prove that he ordered Hecker & Company to sell all his securities on October 28, 1929, or at any other time. On the contrary, witnesses for Hecker & Company testified that Lewis conferred with them on October 28th and, after giving orders for the sale of certain securities, expressed extreme unwillingness to sell any others.

No evidence whatever was offered in behalf of Lewis. His counsel admitted that the schedule attached to the counterclaim, marked "exhibit A", was a correct account of the dates on which the securities were actually sold, the prices obtained, and the indebtedness remaining after each sale. It was admitted in the pleadings that the written calls for collateral and confirmations of sales were received from M. J. Lewis, so he was thoroughly apprised of the state of his affairs at all times. He is therefore liable for the final amount shown in his account unless there is merit in his second argument.

This is based on the testimony of one of the broker's witnesses, on cross-examination, that the securities held by Hecker & Company for the account of M. J. Lewis had been rehypothecated with their New York correspondent for a loan of which he did not know the amount. Counsel for Lewis made no further effort to ascertain the amount of the loan, but asks the court to assume that it was in excess of Hecker & Company's interest in the stock, with the result that, by such conversion, they lost their right of action against Lewis, or at least were entitled to recover only the difference, if any, between the amount owed to them and the damages for conversion which the customer could have recovered from them.

We cannot agree that evidence that the stock was rehypothecated established a prima facie case of conversion with the burden on the brokers to show otherwise. Nor without further proof can we assume that the brokers dealt wrongfully with the stock. This defense was not pleaded but was raised on cross-examination, with no warning to the brokers that they would be required to meet the burden the customer now tries to place on them.

As the plaintiffs in the counterclaim offered no proof of the amount alleged to be due on the Wirtshafter account, guaranteed by M. J. Lewis, that claim has not been considered.

### Conclusions of law

1. Calls for additional collateral, containing notice that failure to receive the collateral would result in the sale of securities held by Hecker & Company for the account of M. J. Lewis, did not obligate Hecker & Company to sell such securities when additional collateral was not supplied.

2. Evidence that Hecker & Company had rehypothecated securities held by them for the account of M. J. Lewis does not establish, prima facie, that the said Hecker & Company had converted such securities to their own use.

3. The defendant in the counterclaim, M. J. Lewis, is indebted to the plaintiffs in the counterclaim, Oscar Hecker, Oscar C. Schmidt, Maximilian Knoll, Russell J. Sellers, and Stover G. Snook, copartners trading as Hecker & Company, in the amount of $27,869.06, with interest thereon from December 26, 1930, or $34,116.38.

### Order

And now, September 20, 1934, in consideration of the foregoing, the prothonotary is directed to notify the parties of the filing of this adjudication, and, unless exceptions thereto be filed within 30 days after service of such notice, to enter judgment hereon against M. J. Lewis, in favor of Oscar Hecker, Oscar C. Schmidt, Maximilian Knoll, Russell J. Sellers, and Stover G. Snook, copartners trading as Hecker & Company, in the amount of $34,116.38.