KAYSER ET AL., APPELLANTS, *v.* ESTABROOK & COMPANY, INC., ET AL., APPELLEES.

[Cite as Kayser v. Estabrook & Co. (1974), 45 Ohio App. 2d 38.]

(No. 7575—Decided February 15, 1974.)

*Mr. Jude F. Sutter,* for appellants.
*Mr. E. Thomas Maguire,* for appellees.

*Per Curiam.* This appeal was taken by plaintiffs Edward A. and Laura Kayser from a summary judgment rendered in favor of defendants Estabrook & Co., Inc., Darrell Davey and John V. Melick, Jr. The individual defendants were Toledo representatives and operated the Toledo office of the stock brokerage firm of Estabrook & Co., Inc., based in New York, N. Y. The judgment was rendered on

the pleadings; the affidavits of Kenneth J. Nixon, and Wilfred Brown of the New York office of the defendants; the deposition of Edward and Laura Kayser, taken on cross-examination; and the deposition of John V. Melick and Darrell Davey, taken on cross-examination.

Plaintiffs were customers of defendants. Plaintiffs engaged in buying and selling stocks on margin, making the margin purchases and the sales of stocks through the defendants, as brokers. Plaintiffs purchased eleven hundred shares of common stock of Ozark Airlines from defendants over a period of time before August 10, 1972. On August 10, 1972, plaintiffs bought four hundred additional shares of Ozark Airlines common stock through the defendants on margin. Excluding the four hundred shares purchased on that date, the equity of plaintiffs in the previously purchased eleven hundred shares of Ozark in the margin account of plaintiffs maintained with defendants was 30.79%. Federal Reserve Regulation T required plaintiffs to pay 55% of the value of the four hundred shares purchased August 10, 1972, thus raising plaintiffs' equity in the fifteen hundred shares of Ozark stock to 36.95%. The settlement or payment date for the four hundred shares of Ozark stock was August 17, 1972. After August 17, 1972, with a downward drift of the market, plaintiffs' equity in the fifteen hundred Ozark shares for the first time reached a point below 25% of market value. On September 8, 1972, plaintiffs' equity in the Ozark shares stood at 24.82%

On August 28, 1972, when plaintiff's equity percentage in the Ozark stock was 30.19%, defendants issued a margin call demanding that plaintiffs deposit $2,000 in the margin account. In response, plaintiffs, on August 29, 1972, made personal contact with defendants Davey and Melick of the Toledo office, but made no deposit of cash or securities. Instead, they asked defendants to "bust the sale" of the four hundred Ozark shares which plaintiffs bought on August 10, 1972, and on which a settlement date of August 17, 1972, had been made. Plaintiffs, by asking to "bust the sale," meant that defendants should void

or nullify the sale and return plaintiffs to the status quo that plaintiffs had before the August 10, 1972 purchase. Defendants did not agree to this and failed to take such action.

On September 7, 1972, defendants sent a second written margin call to plaintiffs to deposit $1,650 in the margin account, at which time plaintiffs' equity percentage in the fifteen hundred shares of Ozark stock was 27.60%. Plaintiffs made no payment on September 8, 1972, and on that date plaintiffs' equity percentage in the Ozark stock fell to 24.82%. On September 15, 1972, defendants sold 600 shares of plaintiffs' Ozark stock which brought plaintiffs' equity percentage in Ozark stock up to 37.52%.

The foregoing facts are undisputed, and the record shows the following additional undisputed facts.

(1) There was no written agreement between the parties governing the creation or operation of the margin account that plaintiffs kept with the defendants.

(2) The margin account of plaintiffs maintained an equity of above 25% until September 8, 1972, at which time Estabrook & Co., Inc., was required, under the rules of the American Stock Exchange, to send a margin call to the plaintiff, which it did on August 28 and September 7, 1972. The reason for the margin calls on such dates was that the equity in plaintiffs' account had been declining steadily since August 14, 1972, and defendants were determined to protect the loan value position in such margin account by requesting additional equity.

(3) Plaintiffs did not respond to either margin call and, as required by the rules of the American Stock Exchange, part of plaintiffs' account was liquidated on September 15, 1972, bringing the plaintiffs' equity to the percentage described above.

(4) Defendants did not induce plaintiffs to purchase the four hundred shares of Ozark stock on August 10, 1972, and on that date did not discuss with plaintiffs the maintenance of margin requirements if thereafter the equity percentage of plaintiffs fell below 25% of market value.

The main thrusts of plaintiffs' action for damages

against defendants is that they were negligent in making the margin purchase of four hundred Ozark shares on behalf of plaintiffs on August 10, 1972, and that they were guilty of conversion in effecting a sale of six hundred Ozark shares on September 15, 1972, after plaintiffs failed to comply with two margin calls.

The assignment of error, in three parts, in essence asserts that the pleadings and other material relevant to the motion for summary judgment raise genuine issues of material facts to the extent that the moving party is not entitled to a judgment as a matter of law. Civ. R. 56 (C). Plaintiffs claim, therefore, that it was reversible error for the trial court to render a summary judgment for defendants. We disagree, and affirm its judgment for the reasons that follow.

The general rule is that a broker carrying a margin account for a customer may make calls for further margin if the margin furnished is inadequate, and, subject to the requirement of sufficient demand and notice, the broker can, upon a customer's failure to respond to the call demand, close out the customer's account by a sale of the securities carried on margin and held as collateral. It has been uniformly held that where the demand of a stockholder for additional margins is not complied with, he may, on giving reasonable notice, close the customer's account. *Small* v. *Housman* (1913), 208 N. Y. 115, 101 N E. 700; 12 American Jurisprudence 2d 890, Brokers, Section 149; annotation, 76 A. L. R. 1527-1533.

If at any time the broker becomes unwilling to stand any longer without additional margin or security being deposited to secure him, he has the right to notify his customer of that fact, and to demand of him the payment or deposit of such additional margin as the broker may require and definitely specify. If, after demanding of his customer such further deposit of money as security against loss to himself, the customer does not promptly, and within a reasonable time after receiving such notifications make a deposit of such additional margin as had been required, then the broker has the right to take such fair and reason-

able steps as may be necessary to prevent loss to himself, and this right is equivalent to an instruction by the customer to the broker to close out the transaction. The broker can close the transaction at any time if the margin, on his demand and notice, is not kept good. *Boyle* v. *Henning* (W. D. Ky. 1902), 121 Fed. 376; *White* v. *Smith* (1874), 54 N. Y. 522; *Small* v. *Housman, supra*; *Armstrong* v. *Bickel* (1907), 217 Pa. 173, 66 A. 326.

The risk of the venture in the purchase of stock on margin is borne entirely by the customer. The customer is under a duty to take and pay for the stock or put up additional margin whenever reasonably requested so to do by the broker. Failing this, the broker may sell after a demand for margin is not complied with and notice of an intended sale has been given. *Rubin* v. *Solomon* (1930), 136 Misc. Rep. 527, 241 N. Y. Supp. 495, 497.

The customer is the one who is speculating, not the broker. The customer has a strong financial incentive to watch market fluctuations, and there is no suggestion that he lacks the facilities for keeping himself advised as to them. It also is easy for the customer to protect himself by giving an order to buy or sell when the market reaches a stated point. *Irving Weis and Co.* v. *Offenberger* (1961), 31 Misc. 2d 628, 220 N. Y. S. 2d 1001.

The application of the foregoing legal principles pertaining to the sale and purchase of securities on margin to the undisputed facts in the present case clearly reveals that there is no genuine issue of any material fact and that defendants are entitled to judgment as a matter of law. The judgment of the Court of Common Pleas of Lucas County is affirmed at the costs of plaintiffs.

*Judgment affirmed.*

Brown, P. J., Potter and Wiley, JJ., concur.